**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COLEMAN SCOTT MOFFETT** *on his own behalf and on behalf of all other persons similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA; HILDA L. SOLIS**, *in her official capacity as Secretary of the United States Department of Labor*<br><br>Defendants. | Civil Action No. 9-cv-1915 (RLW) |
| **CHRISTOPHER C. OUELLETTE**, *on his own behalf and on behalf of all other persons similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**PRUDENTIAL FINANCIAL, INC. (d/b/a PRUDENTIAL INSURANCE COMPANY OF AMERICA; and HILDA L. SOLIS (Secretary of the Department of Labor)**<br><br>Defendants. | Civil Action No. 11-cv-00454 (RLW) |

## MEMORANDUM OPINION[1]

This is an as-yet uncertified class action in which plaintiffs Coleman Scott Moffett ("Moffett") and Christopher C. Ouellette ("Ouellette") (collectively, "Plaintiffs") bring an action

---
[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication.

against Prudential Life Insurance Company of America ("Prudential") and Hilda L. Solis in her official capacity as Secretary of the United States Department of Labor ("Secretary Solis" or "the Secretary") (collectively, "Defendants"), alleging Fifth Amendment due process violations against Prudential, and challenging the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and the United States Department of Labor's ("DOL") Rules and Regulations as unconstitutional under the due process clause.

This matter is before the Court on Defendants' Motions to Dismiss (Docket. Nos. 10 & 12) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). See Fed. R. Civ. P. 12(b)(1); 12(b)(6). Having considered the full briefing on these motions, and for the reasons set forth below, Defendants' motions are GRANTED and Plaintiffs' complaints in this consolidated action are dismissed with prejudice.

## I. BACKGROUND

### A. Statutory Background

Congress enacted ERISA to "protect ... the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004).

Section 503 of ERISA, 29 U.S.C. § 1133, requires companies to provide a claims procedure available following the denial of benefits to a plan participant. Specifically, section 503 provides that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. ERISA further provides that "the Secretary may prescribe such regulation as he finds necessary or appropriate to carry out the provisions of this subchapter." Id. § 1135. Pursuant to this authority, the Secretary promulgated regulations which set forth minimum procedural requirements for "full and fair review" of adverse benefit determinations. In addition to providing claimants with the opportunity to submit and obtain additional information related to their claim for benefits, see 29 C.F.R. § 2560.503-1(h)(2)(ii)-(iv), the regulations also require that every employee benefit plan

> [p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.

29 C.F.R. § 2560.503-1(h)(3)(ii).

### B. Factual Background

Moffett and Ouellette were each insured under a group disability insurance policy issued by Prudential to their respective employers. The facts pertaining to each Plaintiff are as follows. Moffett is a former employee of a corporation known as PEP-Direct. (Compl. ¶ 6). In January 2007, PEP-Direct concluded that Moffett's disability rendered him unable to perform his occupational duties and terminated his active employment with the company. (Compl. ¶ 9). Prudential initially paid Moffett short-term benefits for a period of twelve weeks, but later terminated short-term disability benefits, and denied long-term disability benefits, when it concluded that Moffett was not disabled from his occupation. (Compl. ¶ 13). Moffett, although allowed two appeals under his employer's plan, was denied on both appeals. (Compl. ¶¶ 27-32).

Ouellette was insured through his employer, H.P. Hood, under a Prudential policy for both short and long-term disability. (Compl. ¶ 7). Ouellette, like Moffett, was initially paid short-term disability benefits by Prudential, but was later denied his long-term disability claim because Prudential concluded that Ouellette's disability did not prevent him from performing the material and substantive duties of his occupation. (Compl. ¶ 11). Ouellette exercised his right to two appeals under his employer's plan, but both appeals were denied. (Compl. ¶ 20).

### C. Procedural History

On October 7, 2009, Moffett filed a complaint against Prudential and the Secretary challenging the constitutionality of the appeals process set forth in ERISA and the DOL's regulations implementing ERISA, and alleging that Prudential's denials of administrative appeals

violate the due process clause of the Fifth Amendment and, therefore, should be deemed unlawful and void.

Moffett's complaint alleges three counts. Count I is directed to Prudential only and alleges that Prudential's denials of administrative appeals are unlawful and void because its appeals process, which involves a financially interested decision-maker, violates the due process clause of the Fifth Amendment. Count II is directed to the Secretary and alleges that the Department of Labor has failed to meet its obligations under ERISA to ensure that section 503(2) is interpreted, applied, and exercised in a manner consistent with due process.[2] In Count III, Moffett pleads in the alternative and claims that if section 503(2) is not interpreted as guaranteeing plan participants' rights to a financially neutral adjudicator, then section 503(2) "must be declared unconstitutional as an overly broad delegation of adjudicatory authority." (Compl. ¶ 65). Moffett's complaint seeks both declaratory and injunctive relief.

On December 22, 2009, Prudential filed a motion to dismiss Moffett's complaint for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). (Prudential's Mot. at 1). Prudential argues that Moffett's constitutional claims should be dismissed because (1) Prudential is not a state actor and therefore not subject to the Fifth Amendment's constraints; (2) Moffett has failed to allege a constitutionally-protected property interest; and (3) Moffett has failed to allege

---

[2] Specifically, Moffett alleges that the DOL has: (1) failed to investigate Prudential's civil violations of ERISA—namely, its failure to provide plan participants with "full and fair reviews" in a manner consistent with due process and (2) failed to promulgate regulations that ensure that section 503(2) appeals are conducted by a financially disinterested party.

facts sufficient to establish that Prudential's internal review process deprived him of his property interest without due process of law. Id. at 3.

On January 11, 2010, the Secretary filed a motion to dismiss Moffett's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and, in addition, or in the alternative, for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). (Secretary's Mot. at 2-3). The Secretary argues that Moffett's complaint should be dismissed for lack of subject matter jurisdiction because Moffett lacks standing to assert his claims against the Secretary. Id. at 2. The Secretary also argues that Moffett's complaint should be dismissed under Rule 12(b)(6) because (1) Moffett fails to establish that he was denied due process by virtue of state action; (2) Moffett has no property interest in a favorable regulation; and (3) the Secretary's current regulations are consistent with procedural due process. Id. at 11-28.

On February 28, 2011, Ouellette filed a complaint which is nearly identical to the Moffett complaint, alleging the same due process violations against the same defendants and seeking the same relief. The Court subsequently consolidated the two lawsuits and ordered that the previously filed motions to dismiss in the Moffett case would be treated as valid Rule 12 motions as against the Ouellette complaint as well.

## II. STANDARD OF REVIEW

The Defendants move to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6). With respect to her motion under Rule 12(b)(1), the Secretary argues that Plaintiffs have not fulfilled the constitutional requirement of standing. (Secretary's Mot. at 2). Defendants also challenge the

sufficiency of Plaintiffs' claims under Rule 12(b)(6), and argue that Plaintiffs fail to state a claim upon which relief can be granted.

"The defect of standing is a defect in subject matter jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). In ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court must construe Plaintiffs' complaints liberally, giving them the benefit of all favorable inferences that can be drawn from the alleged facts. See Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Notwithstanding these favorable inferences, Plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear the case. See Khadr v. United States, 529 F.3d 1112, 1115 (D.C. Cir. 2008). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). For this reason, "[P]laintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed. 1990)) (internal quotes omitted). In deciding a 12(b)(1) motion, the Court need not limit itself to the allegations of the complaint, and it may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case. See Herbert v. Nat'l Acad. Of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, acceptable as true, to state a claim to relief that is plausible on its face." Anderson v. Holder, 691 F. Supp. 2d 57, 61 (D.D.C. 2010) (brackets omitted) (quoting Ashcroft v. Iqbal, --- U.S.

7

----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (internal quotes omitted).

A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to plaintiffs and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. In re United Mine Workers of Am. Employee Benefit Plans Litig., 854 F. Supp. 914, 915 (D.D.C. 1994). However, where the well-pleaded facts do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. Iqbal, 129 S. Ct. at 1950. In evaluating a Rule 12(b)(6) motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." Trudeau v. FTC, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

### III. ANALYSIS

#### A. Claims Against Prudential – Count I

According to Plaintiffs, Prudential's review process violates due process because it does not provide for a "full and fair" review by a neutral party. (Compl. ¶ 45). However, the Court concludes that Plaintiffs' claims must be dismissed because they fail to show that Prudential's process of reviewing administrative appeals under section 503(2) is subject to constitutional scrutiny.

Generally, the Constitution's protections of procedural due process will only be triggered by conduct that constitutes state action. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489

U.S. 189, 196 (1989). "In the typical case raising a state-action issue, a private party has taken the decisive step that caused harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." Nat. Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988); see e.g. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974) ("the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."). Therefore, "merely private conduct, no matter how discriminatory or wrongful" fails to qualify as state action. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).

Plaintiffs appear to rely on several theories in asserting that Prudential is a state actor. First, Plaintiffs posit a delegation theory, asserting that Prudential's authority to review disability benefit determinations is "governmentally derived adjudicatory authority" because a "Congressional mandate to perform a particular function necessarily delegates the authority to carry out that function." (Compl. ¶ 45). Second, Plaintiffs assert that Prudential is a state actor because it performs a function typically performed by the government. Plaintiffs state that "the function of resolving a controversy or dispute about whether a claim was rightly or wrongly denied is necessarily an adjudicative function, no different in kind from what courts, arbitrators, or administrative law judges do in deciding who wins and who loses the controversies placed before them." Id. And finally, Plaintiffs appear to rely upon an entwinement theory to establish the presence of state action. None of Plaintiffs' theories are availing, and the Court will discuss each in turn.

9

Prudential's internal review procedures are not state action. "In cases involving extensive state regulation of private activity," the Supreme Court has "consistently held that 'the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State.'" Sullivan, 526 U.S. at 52 (quoting Jackson, 419 U.S. at 350). Plaintiffs' short-term and long-term disability plans grant Prudential "the sole discretion to interpret the terms of the [Plans], to make factual findings, and to determine eligibility for benefits." (Compl. Ex. 5 at 28; Ex. 6 at 34). The plans also set forth the procedures for appeals of adverse benefit determinations, including at least two levels of appeals and opportunity to supplement the record at each appeal. (Compl. Ex. 5 at 29-30 ; Ex. 6 at 35-36). Thus, Prudential's authority to initially determine benefit eligibility and review those determinations was created, not through governmental enactment, but by the contract between Plaintiffs' employers and Prudential. (Compl. Ex. 5 & 6). The fact that section 503(2) of ERISA imposes minimum standards on what opportunity a plan participant must have for a "full and fair review" does not convert Prudential's review process to state action. See Bryant v. Jefferson Fed. Sav. & Loan Ass'n, 509 F.2d 511, 513 (D.C. Cir. 1974) (explaining that "[s]tatutes and laws regulate many forms of purely private activity . . . and subjecting all behavior that conforms to state law to the [due process clause] would emasculate the state action concept).

Plaintiffs have no direct authority to support their claim that Prudential is a state actor. Plaintiffs cite to Concrete Pipe & Prods. v. Construction Laborers Pensions Trust, 508 U.S. 602 (1993), and Schweiker v. McClure, 456 U.S. 188 (1982), to support a finding of state action based on a theory that plan administrators' authority to make and review claim determinations is derived from a delegation of governmental authority.

In Concrete Pipe, plaintiffs challenged the constitutionality of a procedure under the Multiemployer Pension Plan Amendments Act ("MPPA") which allows for assessment of withdrawal liability under 29 U.S.C. §§ 1381, 1391. See Concrete Pipe, 508 U.S. at 609-610. One of Concrete Pipe's grounds for the challenge was that the MPPA violates due process because it did not provide them with a neutral adjudicator and impermissibly placed the determination of withdrawal liability in the hands of trustees laboring under a conflict of interest. Id. at 615. The Supreme Court held that the MPPA did not unconstitutionally deny Concrete Pipe an impartial adjudicator. Concrete Pipe, 508 U.S. at 620. Central to the Court's holding was the fact that the trustees' liability determination bore the hallmarks of an assessment rather than adjudication. Id. at 619. The trustees were not required to hold a hearing, examine witnesses, or adjudicate the disputes of contending parties on matters of fact or law. Id. The Court found that because the trustees were acting in an enforcement capacity—rather than performing an adjudicative function—that "due process may be satisfied by providing for a neutral adjudicator to conduct a *de novo* review of all factual and legal issues." Id. at 618. Because Concrete Pipe was entitled to *de novo* hearing at arbitration before a neutral party, the Court determined that Concrete Pipe's due process rights were not violated. The Court did not address the state action issue. Thus, aside from the Court's statement that "due process requires a neutral and detached judge is required in the first instance," Id. at 616 (internal quotes omitted), nothing in the Court's holding or reasoning in Concrete Pipe supports Plaintiffs' position.

Plaintiffs' reliance on McClure is similarly unavailing. The Court in McClure held that there was no violation of procedural due process where Medicare B determinations by private insurance

11

carriers were reviewed by hearing officers appointed by the carriers. McClure, 456 U.S. at 200. While the District Court below relied almost exclusively on the "generalized assumptions of possible interest," the Court found that "[i]n the absence of proof of financial interest on the part of the carriers, there is no basis for assuming a derivative bias among their hearing officers." Id. at 196-197. The Court did not reach the state action issue because the Secretary of Health and Human Services was authorized by Congress to contract with the private insurance carriers to administer payment of Medicare claims. Id. at 190. In this case, however, Plaintiffs have alleged no facts to suggest a delegation of a governmental function to Prudential. Indeed, Prudential's authority to administer disability claims is created by contract and not delegated by government. See Wade v. Life Ins. Co. of N. Am., 245 F. Supp. 2d 182, 190 (D. Me. 2003) ("ERISA does not delegate any adjudicative functions to an otherwise private party."); Black v. UnumProvident Corp., 245 F. Supp. 2d 194, 199 (D. Me. 2003) (same).

Plaintiffs urge that state action is present because Prudential adjudicates the rights of plan participants, and hence performs a public function. The public function test consists of determining whether the state has delegated to private party "a function traditionally exclusively reserved to the states." Jackson, 419 U.S. at 352. "While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." Flagg Bros. v. Brooks, 436 U.S. 149, 158 (1978) (internal quotes omitted). The function that Prudential carries out in this case—making disability claim determinations and reviewing those decisions—are not "powers traditionally exclusively reserved to the State." Jackson, 419 U.S. at 353; see Barrios-Velasquez v. Asociacion de Empleados Del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 494 (1st Cir.

1996) (explaining that while providing benefits such as loans, insurance, and medical services promote the public interest, "these services cannot reasonably be characterized as the exclusive province of the State, since banks, credit unions, savings and loan associations, brokerage firms, mutual funds, and insurance companies traditionally have existed to promote savings, loans and health and other insurance."). While adjudication of insurance benefits is a function that is sometimes performed by the government, Social Security being one example, it is certainly not a function exclusively reserved to the state. Prudential has not met the public function test.

  Plaintiffs cite to <u>Brentwood Academy v. Tennessee Secondary School Athletic Ass'n</u>, 531 U.S. 288 (2001), to support state action under a theory of government entwinement. In <u>Brentwood Academy</u>, the Supreme Court held that regulatory enforcement by a state interscholastic association was "state action" for purposes of the Fourteenth Amendment, despite the association's private character, in light of pervasive entwinement of public institutions and public officials in its composition and workings. <u>Id</u>. at 932. The Court stressed two points: that the membership of the association was mostly comprised (84 percent) of "public schools represented by their officials acting in their official capacity," <u>Id</u>. at 299-300, and that, at bottom, the association set binding athletic standards for state schools, including the standards at issue in the case. These two factors played a significant role in the Court's conclusion that "[t]he nominally private character of the [a]ssociation [w]as overborne by the pervasive entwinement of public institutions and public officials in its composition and workings . . . ." <u>Id</u>. at 298.

  Such is not the case here. The only connection between Prudential and the government is that Prudential is subject to the regulations the Department of Labor issues under ERISA. There is no

allegation that government officials direct or control Prudential in the ordinary course of Prudential's decision making. Moreover, there is no basis for Plaintiffs' allegation that the specific activity alleged to be state action—namely, Prudential's determination of participant benefits—constitutes entwinement. The Prudential Summary Plan Description provides that

> [t]he Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(Compl. Ex. 6 at 34). Plaintiffs' complaint has identified no nexus between any government action and Prudential's decision to review its own disability decisions. Indeed, it is the government's lack of action--failing to limit Prudential's ability to review its own decisions--that Plaintiffs complain of here.

This case is much closer to those where the courts have found no state action when a private entity, though acting in a heavily regulated environment, makes its own discretionary decisions without compulsion, encouragement, or other involvement by the government. See, e.g., Blum, 457 U.S. at 991 (no state action where nursing homes, though operating in heavily regulated industry, exercised completely independent discretion in making patient-transfer decisions); Jackson, 419 U.S. at 345 (1974) (finding that utility company was not a state actor despite being subject to extensive state regulation); Bryant, 509 F.2d at 513 (finding no state action in challenged foreclosure practices because the deed of trust was created, "not through governmental enactment, but by private consensual agreement"). Following those cases, the Court concludes that Prudential is not a state

actor and thus all of plaintiffs' claims against it, which all derive from the Fifth Amendment, must be dismissed.

### B. Claims Against the Secretary – Counts II & III

Article III of the Constitution "confines the federal courts to adjudicating actual cases and controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). Because standing is a component of the case or controversy requirement, a court does not have subject matter jurisdiction if a plaintiff lacks standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). In order to satisfy the "irreducible constitutional minimum of standing," plaintiffs must demonstrate: (1) that they have suffered injury in fact, an actual or imminent invasion of a legally protected, concrete and particularized interest; (2) a causal connection between the alleged injury and the defendant's conduct at issue; and (3) that it is "likely," not "speculative," that the court can redress the injury. Id. at 560-61. Because the Court is obligated to ensure that it is acting within its jurisdiction, Plaintiffs' allegations related to standing will bear closer scrutiny on a motion to dismiss under Rule 12(b)(1). See Grand Lodge of Fraternal Order of Police, 185 F. Supp. 2d at 13-14.

Plaintiffs lack standing to bring their claims against the Secretary because they fail to meet the first prong of the Article III standing analysis—injury in fact. Plaintiffs have carefully crafted their complaints to articulate their harm in a very precise way. Plaintiffs have not alleged a claim for benefits under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), which provides a remedy for participants to recover "benefits due [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms

15

of the plan."[3] Instead, Plaintiffs have sought equitable relief under section 1132(a)(3), which provides equitable relief to plan participants for violations of the ERISA statute. Thus, the injury, as articulated by Plaintiffs, is that they are harmed by "§ 503(2) appeals decisions by adjudicators financially interested in the outcome," in other words, a procedural injury. (Pl.'s Opp'n at 6). However, a decision by a conflicted decision-maker alone does not rise to the level of an injury-in-fact sufficient to establish Article III standing.

In order to establish injury-in-fact in a "procedural injury" case, Plaintiffs must show that "the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 664 (D.C. Cir. 1996). Plaintiffs' procedural injury, if any, is that they have not been afforded an appeal to an arbiter that is not infected with a financial conflict of interest. However, Plaintiffs' allegation of procedural injury, absent any allegation of particularized injury, is not enough to meet the requirements of Article III standing. Beside mere speculation and conjecture, Plaintiffs have not alleged that this procedural defect caused the denial of benefits for both Plaintiffs. In fact, Plaintiffs have expressly stated that they are not seeking to recover disability benefits. (See Pl.'s Opp'n at 7). Thus, the only injury that is alleged by Plaintiffs is that Prudential's review process is a violation of due process. However, as discussed *supra*, Prudential's review process does not violate due process because Prudential is not a state actor subject to constitutional scrutiny. Therefore, it appears that

---

[3] The Court is concerned that Plaintiffs' counsel—in pursuing an interest about which he is clearly passionate—has chosen to advance a novel theory of relief (likely to his clients' detriment), rather than make a claim for his clients' disability benefits under section 1132(a)(1)(B).

Plaintiffs' claims against the Secretary fail because they cannot show that they have suffered an injury-in-fact.

For the forgoing reasons, the Court finds that Plaintiffs have not established standing for their claims against the Secretary. Accordingly, these claims will be dismissed with prejudice.

## IV. CONCLUSION

For the forgoing reasons, Defendants' motions to dismiss Plaintiffs' Complaints are GRANTED. Plaintiffs' Complaints are hereby dismissed with prejudice.

SO ORDERED.[4]

Date: September 21, 2011
/s/
ROBERT L. WILKINS
United States District Judge

---

[4] An order will be issued contemporaneously with this memorandum opinion granting Defendants' motions to dismiss Plaintiffs' Complaints.