SUMMARY OPINION AND ORDER; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COLEMAN SCOTT MOFFETT**, *on his own behalf and on behalf of all other persons similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> **PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA; HILDA L. SOLIS,** *in her official capacity as Secretary of the United States Department of Labor*, <br><br> Defendants. | Civil Action No. 09-cv-1915 (RLW) |
| **CHRISTOPHER C. OUELLETTE**, *on his own behalf and on behalf of all other persons similarly situated***, <br><br> Plaintiffs, <br><br> v. <br><br> **PRUDENTIAL FINANCIAL, INC. (d/b/a PRUDENTIAL INSURANCE COMPANY OF AMERICA; and HILDA L. SOLIS (Secretary of the Department of Labor**), <br><br> Defendants. | Civil Action No. 11-cv-454 (RLW) |

## MEMORANDUM OPINION[1]

---

[1]    This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or, alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling.  The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel.  *Cf.* FED. R. APP. P. 32.1(a).  Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an

SUMMARY OPINION AND ORDER; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

This action centers on Plaintiff Coleman Scott Moffett's ("Moffett") and Christopher C. Ouellette's ("Ouellette") (collectively, "Plaintiffs") challenge to Prudential Life Insurance Company of America's ("Prudential") employer-based disability plan.   In short, Plaintiffs contend that the structure of Prudential's plan—through which Prudential not only makes initial determinations on participants' eligibility for benefits, but also reviews those determinations through an internal appeals process—does not provide for a "full and fair" review of participants' claims by a neutral party.   Moffett's and Ouellette's Complaints were consolidated by the Court on March 31, 2011, as both cases asserted nearly identical claims against the same defendants—(1) alleging Fifth Amendment due process violations against Prudential; (2) alleging Fifth Amendment due process claims against Hilda L. Solis, in her official capacity as the Secretary of the Department of Labor; and (3) challenging the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, and various United States Department of Labor Rules and Regulations as unconstitutional under the due process clause.

Both Prudential and the Secretary moved to dismiss Plaintiffs' Complaints, and on September 21, 2011, the Court granted their motions and dismissed these consolidated cases with prejudice.   (Dkt. Nos. 27, 28).[2]   The Court held that Plaintiffs' due process claims against Prudential, which derived from the Fifth Amendment, were invalid as a matter of law because Prudential is not a state actor subject to constitutional scrutiny.   (*Id.*).   In addition, the Court ruled that Plaintiffs' claims against the Secretary were invalid because Plaintiffs were unable to satisfy the jurisdictional prerequisite of Article III standing to pursue those claims.   (*Id.*).

---

unpublished disposition means that the Court sees no precedential value in that disposition."
D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

[2]     Unless otherwise indicated, the Court's docket references herein are to the docket for the lead case of these consolidated actions, *Moffett, et al. v. Prudential Insurance, et al.*, 09-cv-1915.

Plaintiffs have since filed several post-judgment motions, which are now before the Court.  First, Plaintiffs filed a motion to alter or amend the Court's judgment, under Federal Rule of Civil Procedure 59(e).  (Dkt. No. 29).  Through that motion, Plaintiffs principally assert that the Court's ruling as to their claims against Prudential through Count I "directly conflicts" with a recent Supreme Court decision, *Cigna Corp. v. Amara*, _ U.S._, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011).  They also contend that the Court's standing analysis, which disposed of Counts II and III against the Secretary, overlooked the allegations of Ouellette's Complaint, which Plaintiffs argue did allege a cognizable injury-in-fact for purposes of Article III.  Along with their Rule 59(e) motion, Plaintiffs also filed a motion to amend their complaints under Federal Rule of Civil Procedure 15(a) and for relief of judgment of dismissal under Federal Rules of Civil Procedure 60(a) and (b)(6).  (Dkt. No. 30).

Having considered Plaintiffs' motions, Prudential's and the Secretary's opposition briefing, and Plaintiffs' replies, for the following reasons, the Court will **DENY** Plaintiffs' motions in all respects.

## ANALYSIS

### A.  Plaintiffs' Motion to Alter or Amend Judgment Under Rule 59(e)

Motions to alter or amend under Rule 59(e) "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."  *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing *Anyanwwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998)).  As this Circuit has explained, a Rule 59(e) motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice." *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).   Consequently, "a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously." *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).   Nor is a Rule 59 motion a means by which to "reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or "a chance . . . to correct poor strategic choices," *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 15 (D.D.C. 2010).

Through their motion, Plaintiffs conclusorily assert that all of the potential Rule 59(e) grounds for relief require the Court to revisit its dismissal ruling.   (Dkt. No. 33 ("Pls.' Reply") at 2).   But Plaintiffs do not point to any "new evidence" that impacts the Court's analysis, nor do they identify any "intervening change in controlling law" that would dictate a different result.   Rather, Plaintiffs appear to solely contend that the Court should amend its decision because it was premised on "clear legal error" and/or creates "manifest injustice."   As explained below, Plaintiffs fail to establish that they are entitled to Rule 59(e) relief on these grounds as to any of their previously-dismissed claims.

First, with respect to Count I, Plaintiffs principally contend that the Supreme Court's decision in *Cigna Corporation v. Amara*, _ U.S. _, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), somehow undermines this Court's dismissal of their claims against Prudential.   Plaintiffs are wrong.   In *Amara*, the Supreme Court was presented with the specific issue of whether the district court, upon determining that Cigna violated ERISA's disclosure obligations in connection with the change of its pension plan, properly "reformed" the terms of that plan pursuant to 29 U.S.C. § 1132(a)(1)(B), and, if so, whether the court applied the appropriate legal standards in reforming the plan.   *Amara*, 131 S. Ct. at 1870-71.   In sum, the Court concluded that

§ 1132(a)(1)(B) did not authorize such a reformation but explained that "a different equity-related ERISA provision . . . authorizes forms of relief similar to those that the court entered." *Id.* at 1871 (citing to 29 U.S.C. § 1132(a)(3)). The Court then outlined the relevant "equitable principles that the court might apply on remand" and remanded the matter for further proceedings. *Id.*

In relying on *Amara*, Plaintiffs appear to ignore the actual holding of the Court, instead choosing to seize upon the Justices' discussion of a single rejected argument advanced in support of affirmance—that the district court had not really "reformed" Cigna's plan, it simply enforced the plan's terms as written, including certain terms encompassed by the plan's disclosures and summary plan descriptions. *See id.* at 1877. The Court disagreed with that argument because, among other reasons, it was unwilling to find that "the terms of statutorily modified plan summaries (or summaries of plan modifications) necessarily may be enforced . . . as the terms of the plan itself." *Id.* Put differently, the *Amara* Court declined to find that terms of the summary plan descriptions should be characterized as terms of the plan itself.

Plaintiffs now argue that this passage from the *Amara* case requires the reinstatement of their due process claims against Prudential. Of course, this Court previously dismissed those claims on the ground that Prudential was not a "state actor" susceptible to constitutional due process claims under the Fifth Amendment. (Dkt. No. 27 ("Mem. Op.") at 8-15). On that issue, Plaintiffs now attempt to assail the Court's reasoning that Prudential's authority to determine a plan participant's benefit eligibility and to review those initial determinations "was created, not through governmental enactment but by the contract between Plaintiffs' employers and Prudential." (Pls.' Mem. at 4-5). Plaintiffs argue that, to the extent the Court looked to Prudential's summary plan documents rather than the actual plan terms themselves to support its

reasoning, its holding cannot stand.   The Court does not agree.   Not only do Plaintiffs misunderstand *Amara*'s impact, they also oversimplify the Court's basis for dismissing their claims against Prudential in the first place.

First, the *Amara* decision has absolutely no impact on this Court's conclusion that Prudential is not a "state actor."   In reality, other than the fact that *Amara* also involved an employee-benefits plan administered under ERISA's broad statutory scheme, that case has almost nothing in common with the instant matter.   As Prudential correctly points out, the critical issue underlying the Court's dismissal of the claims in this case was not whether certain plan terms were properly included in Prudential's summary plan documents, rather than within the four corners of the plan document itself.   (Dkt. No. 31 ("Prud. Opp'n") at 4).   Instead, the critical issue was whether Prudential's authority is rooted in a private agreement with Plaintiffs' employers or in some governmental delegation, and the Court concluded that it was the former. Nothing in *Amara* changes that result.   Indeed, even if the Court were to credit Plaintiffs' argument to some degree, which it does not, they would be no closer to establishing that Prudential is a "state actor" subject to constitutional scrutiny.   At most, Plaintiffs might raise a credible issue as to whether certain terms in the summary plan documents are terms that the Court can "enforce" within the meaning of § 1132(a)(1)(B).   *See Amara*, 131 S. Ct. at 1876-78. But that question is obviously not before the Court and has no bearing on its prior holding.

In addition, Plaintiffs' arguments surrounding the *Amara* case are weakened by the fact that these same arguments were available to them earlier.   *Kattan by Thomas*, 995 F.2d at 276; *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004).   The *Amara* decision was issued on May 16, 2011, more than two weeks before Plaintiffs filed their supplemental memorandum in opposition to Prudential's and the Secretary's motions to dismiss on May 31, 2011.   (Dkt. No.

24). To the extent that Plaintiffs found *Amara* supportive of their position, they could have advanced these arguments at that time, but they did not. Plaintiffs concede as much, (*see* Dkt. No. 34 ("Pls.' Sec'y Reply") at 3-4), but proceed to criticize Prudential for failing to apprise the Court of the *Amara* decision, strongly suggesting that its failure to do so amounted to a violation of the D.C. Rules of Professional Conduct, (*id.* at 4-5). This sort of mudslinging is altogether unpersuasive and unseemly, particularly given the Court's conclusion that *Amara* is not even germane to the issues of this matter, let alone "outcome determinative," as Plaintiffs contend. In sum, Plaintiffs fail to establish any basis for relief under Rule 59(e) with respect to the Court's dismissal of their claims against Prudential (Count I).

Turning to Plaintiffs' claims against the Secretary, the Court dismissed those claims because it found that Plaintiffs failed to allege a cognizable injury-in-fact. Specifically, the Court explained that Plaintiffs' Complaints were "carefully crafted" to avoid alleging a claim under ERISA's civil enforcement provision, 29 U.S.C. §1132(a)(1)(B), instead asserting procedural injuries—*i.e.*, that they were purportedly unable to obtain an impartial review of their benefits determinations under Prudential's plan. (Mem. Op. at 15-17). Insofar as those procedural-type allegations were speculative and devoid of any "particularized injury," the Court held that Plaintiffs lacked standing to pursue their claims against the Secretary. (*Id.*).

Plaintiffs now assert that this finding was in error, arguing that Ouellette's Complaint <u>did</u> allege a claim for benefits due under § 1132(a)(1)(B). To this end, they point to the prefatory paragraphs of Ouellette's Complaint, which state that "this Court has authority to grant individual relief to the named Plaintiff pursuant to 29 U.S.C. § 1132(a)(1)(B) for benefits due him under the terms of his plan." (Pls.' Mem. at 6 (quoting *Ouellette v. Prudential Insurance, et al.*, 11-cv-0454 Dkt. No. 1 ("Ouellette Compl.") at ¶ 5)). They also cite to language from

SUMMARY OPINION AND ORDER; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

Ouellette's prayer for relief, which seeks "the benefits due him." (*Id.* (quoting Ouellette Compl." at ¶ 59)). Based on these allegations, Plaintiffs argue that Ouellette "plainly states a claim for benefits due" and has standing to pursue his claims against the Secretary.[3] The Court disagrees.

As both Prudential and the Secretary rightly argue, Plaintiffs failed to advance this theory in opposing the dismissal of their claims in the first place. To be sure, this precise issue was squarely teed up by the Secretary, who, in pressing for the dismissal of Plaintiffs' claims, argued as follows:

> To the extent that Plaintiff's claims are rooted in purported procedural deficiencies in the Regulations themselves (as opposed to the denial of his claim for disability benefits), as Plaintiff appears to assert in his opposition, Plaintiff lacks standing . . . .

(Dkt. No. 18 ("Sec'y Opp'n") at 4-5). If Plaintiffs disagreed with that characterization—and truly believed they were advancing traditional benefits-due claims under § 1132(a)(1)(B)—they could have argued as much in their initial briefing. They chose not to do so, and the Court will not permit them to belatedly make these arguments now. *Kattan*, 995 F.2d at 276; *Fox*, 389 F.3d at 1296. Thus, the Court finds that Plaintiffs fail to establish the requisite "clear error" or "manifest injustice" that would entitle them to relief under Rule 59(e) with respect to their claims against the Secretary (Counts II and III).[4]

---

[3]    Plaintiffs make no argument that Moffett alleged such a claim or that he otherwise possesses Article III standing to pursue his claims against the Secretary. Instead, Plaintiffs argue, in conclusory fashion, that because Moffett is a member of the class that Ouellette seeks to represent, "the complaints should remain consolidated." (Ouellette Compl. at ¶ 59). While the Court is not convinced that Moffett's membership in Ouellette's alleged class, without more, would warrant the revival of his independently-alleged claims against the Secretary, the Court need not reach this issue because it finds that Ouellette is not entitled to relief under Rule 59(e) in the first place.

[4]    Nevertheless, even if Plaintiffs had advanced this newly-minted standing theory sooner, the Court does not find their argument that Ouellette did assert a claim under § 1132(a)(1)(B) to be particularly persuasive, given that the only allegations Plaintiffs point to are from the prefatory jurisdictional statement and the prayer for relief of his Complaint. As the Tenth Circuit Court of Appeals recently held, "the prayer for relief is no part of the cause of action." *Coll v.*

SUMMARY OPINION AND ORDER; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

**B. Plaintiffs' Motion for Leave to Amend Complaints Under Rule 15(a)**

Plaintiffs also seek leave to amend their Complaints under Federal Rule of Civil Procedure 15(a). As the D.C. Circuit has repeatedly held, however, "once a final judgment has been entered, a court cannot permit an amendment unless the plaintiff 'first satisfies Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208). Insofar as Plaintiffs fail to establish any entitlement to relief under Rule 59(e), their request for leave to amend under Rule 15(a) is therefore denied as moot.

**C. Plaintiffs' Motion to Correct Judgment Under Rule 60**

Lastly, Plaintiffs appear to seek relief under Federal Rules of Civil Procedure 60(a) and 60(b)(6), which allow for relief from a judgment or order under limited circumstances. Other than a bald reference to Rule 60 in the caption of their motion, however, Plaintiffs do not otherwise discuss the applicable standards under Rule 60, let alone explain how they believe it would entitle them to relief in this case. As Prudential correctly points out, Rule 60(a) is clearly inapplicable because it only permits the Court to correct "clerical mistake[s]," FED. R. CIV. P. 60(a), none of which is alleged here. While Rule 60(b)(6), on the other hand, empowers the Court to relieve a party from judgment for "any other reason that justifies relief," our Circuit has

---

*First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011); *see also Jovanovic v. US-Algeria Business Council*, 561 F. Supp. 2d 103, 108 n.2 (D.D.C. 2008). Jurisdictional and prefatory statements are similarly construed. *See Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 863 (8th Cir. 2010) (holding that plaintiff's conclusory reference to a statutory provision in the complaint's jurisdictional allegations, without more, "did not give the opposing party fair notice of such a claim"). Along these lines, Plaintiffs do not and cannot point to any separately- and explicitly-pled claim for benefits under ERISA's enforcement provision, § 1132(a)(1)(B), and the Court would be hard-pressed to read such a claim into Ouellette's Complaint based solely on the allegations Plaintiffs now identify.

SUMMARY OPINION AND ORDER; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

made clear that this rule only applies to "extraordinary situations . . . and should only sparingly

be used." *Twelve John Does v. Dist. Of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988)

(internal citations omitted); *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.

Cir. 1980).  Insofar as Plaintiffs purport to rely on the same unsuccessful arguments underlying

their Rule 59(e) request for relief, the Court finds no basis for relief under Rule 60(b)(6) either.[5]

## **CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiffs' motions (Dkt. Nos. 29, 30)

must be **DENIED** in all respects.  An order accompanies this Memorandum Opinion.

Date:  November 30, 2012

_____
ROBERT L. WILKINS
United States District Judge

---

[5]      Further, given that Plaintiffs failed to even address Rule 60 in their reply briefing, the Court treats these arguments as conceded.  *Newton v. Office of the Architect of the Capitol*, 840 F. Supp. 2d 384, 397 (D.D.C. 2012) ("When a party files an opposition addressing only certain arguments raised in a dispositive motion, a court may treat those arguments that the non-moving party failed to address as conceded."); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").